UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TINA G. WRIGHT

        Plaintiff,

v.

STRYKER CORPORATION,

        Defendant.

Civil Action 2:19-cv-2877
JUDGE EDMUND A. SARGUS, JR.
Chief Magistrate Judge Elizabeth Preston Deavers

## OPINION AND ORDER

Plaintiff Tina Wright ("Plaintiff") brought this action against Defendant Stryker Corporation ("Defendant") after she suffered injuries from a prosthetic hip implant allegedly manufactured by Defendant. The instant matter is before the Court for consideration of several pending motions: Defendant's Motion to Dismiss for Failure to State a Claim, Motion to Dismiss for Lack of Jurisdiction (ECF No. 4), Plaintiff's Motion to Remand (ECF No. 6), Plaintiff's Motion to Amend and to State a Claim and Not Dismiss (ECF No. 9), Defendant's Motion to Strike (ECF No. 14), and Defendant's Motion for Sanctions (ECF No. 15).

For the reasons that follow, Defendant's Motion to Dismiss for Failure to State a Claim, Motion to Dismiss for Lack of Jurisdiction and Defendant's Motion to Strike are **GRANTED**. (ECF No.s 4 & 14). Plaintiff's Motion to Remand and her Motion to Amend and to State a Claim and Not Dismiss are **DENIED as moot**. (ECF No.s 6 & 9). Finally, Defendant's Motion for Sanctions is **DENIED**. (ECF No. 15).

1

**I**

**A. Background**

Plaintiff is a *pro se* litigant who resides in Columbus, Ohio. (ECF No. 3 at 1).[1] Although it is not entirely clear from Plaintiff's Complaint, Plaintiff appears to have sought medical treatment at some point in time for her right hip. (*Id.*). Thereafter, Plaintiff discovered that she needed a total hip replacement also known as a hip arthroplasty. (*Id.*). Dr. Robert Earl Bartley ("Dr. Bartley") performed the surgery and he implanted Stryker Corporation products (the "Stryker Implant") into Plaintiff's right hip during the procedure. (*Id.* at 1-2).

After the surgery, Plaintiff experienced pain in her hip and the surrounding area. (*Id.*). Plaintiff called Adriana Agnihotri ("Adriana")—Senior Legal Manager for Defendant—to discuss her pain and suffering which Plaintiff attributed to the Stryker Implant. (*Id.*). Plaintiff contacted Defendant both by mail and by phone, and she recorded her phone calls with Defendant's employees. (*Id.*). Plaintiff also provided MRI-CT scans, X-Rays, and other images to Defendant to facilitate its investigation into her injury. (*Id.*).

Thereafter, Plaintiff called Adriana a second time. (*Id.*). During that call, Plaintiff discovered that Adriana could not identify the product implanted in her hip. (*Id.*). Consequently, Adriana told Plaintiff to request the product once Plaintiff could have it removed, document the serial numbers that appeared on the product for Defendant's review, and report back to her if Plaintiff encountered any difficulties. (*Id.*).

It is not clear whether Plaintiff followed Adriana's instructions, but it appears that Plaintiff called Adriana a week later to follow up on their conversation. (*Id.*). During that call, Adriana told

---

[1] Plaintiff did not include paragraph numbers in her Complaint. Therefore, each citation to the Complaint will rely on the Complaint's page numbers.

Plaintiff that she was waiting to receive records from Dr. Bartley concerning her initial hip surgery. (*Id.*).

According to Plaintiff, Adriana received Dr. Bartley's records and her demeanor changed. (*Id.*). Specifically, Adriana told Plaintiff that she could not find any issues with the records and that she had nothing more to discuss with Plaintiff. (*Id.*). Plaintiff also alleges that it took one day for Adriana to review Dr. Bartley's records, yet it took two weeks for her to review the medical records that Plaintiff originally sent. (*Id.*).

Plaintiff further claims that Dr. Bartley falsified the medical records that he sent to Adriana. (*Id.*). According to Plaintiff, Dr. Bartley's medical records contained several false statements. (*Id.*). First, Dr. Bartley stated that Plaintiff "complained" of back issues but Plaintiff was unaware of any back problems at the time that she consulted with Dr. Bartley. (*Id.*). Second, Dr. Bartley "complained" about Plaintiff's left hip when Plaintiff never consulted Dr. Bartley for left hip treatment. (*Id.*). Third, Dr. Bartley said there was no fluid in Plaintiff's right hip "upon injection," and that fluid could not be collected from her right hip because of the Stryker Implant, however, Plaintiff argues that there was fluid mixed with debris in her hip that was discovered later. (*Id.*). Fourth, Dr. Bartley said the Stryker Implant was not too loose, which, in Plaintiff's view, was also found to be untrue. (*Id.*). According to Plaintiff, she subsequently consulted another physician, Dr. Vasslif, who gave her medical documentation that conflicted with many of the statements in Dr. Bartley's report. (*Id.*).

After discussing Dr. Bartley's report with Adriana, Plaintiff began to suspect Dr. Bartley of taking measures to conceal her post-operative complications. (*Id.*). According to Plaintiff, Dr. Bartley refused and continues to refuse to provide certain records pertaining to her hip arthroplasty. (*Id.*). He also refused to conduct Chromium testing or any other testing on Plaintiff because he

allegedly did not believe there was any metal in Plaintiff. (*Id.*). In Plaintiff's view, these circumstances indicate that Dr. Bartley knew of Plaintiff's injuries and failed to warn either Plaintiff or Defendant. (*Id.*).

Likewise, Plaintiff claims that Defendant understood the nature of her injuries and refused to take action or warn Plaintiff that her pain and suffering was caused by the Stryker Implant. (*Id.*). To support this assertion, Plaintiff alleges that:

> THE (OATH) OF (NOT TO HARM) WENT OUT THE WINDOW WITH ( MISS ADRIANA AGNTHROTRI OF STRYKER MANUFACTORS [sic]) SHE REPLACE IT WITH A BRIVE [sic] TO ASSIST IN ORGANIZED ORTHOPEDIC CRIME RING THE FIRST SIT OF MRI-CAT SCAN - EXRAYS [sic] IT SHOWED STRYKER, THAT IT WAS OVERSIZED A FRACTURE A DIMINISHED DECENTIGRATEING [sic] STRYKER STEM ,METAL ON METAL IT SHOWED IT TO BE LOGGED INTO THE VICTIMS PELVIS BONE LOSS OF FATTY IT SHOW A VERY PAINFUL AND LIFE THREATING CITUAION [sic] STRYKER KNEW OF THE SEVERE HARM AND DAMAGES IT WAS PROVIDEING [sic] TO ITS PATIENT BUT TURNED A (BLIND EYE) FOR A PROFIT, STRYKER KNEW IT WAS CAUSING BLINDNESS KNEW THAT THEY HAD( FAILED TO WARN) KNEW OF THE INGROTH [sic] LIKE A UNWILLING TEST SUBJECT PATIENT WAS LEFT TO SUFFER INTILL [sic] SHE DIES . . . .

(*Id.* at 3).

Plaintiff also asserts that Defendant purposefully engaged in "stall tactics" with an intent to harm her. (*Id.*). Plaintiff claims that she sought investigation of her injuries through Defendant's legal team, and that no investigation ever occurred. (*Id.*). In fact, Plaintiff alleges that Adriana told her not to communicate with any of Defendant's employees regarding her injuries. (*Id.*).

Thereafter, from September 3, 2017 to September 4, 2018, Plaintiff was unable to acquire assistance from any member of Defendant's team other than Adriana. (*Id.*). On September 4, 2018, Plaintiff alleges she received correspondence from Defendant's compliance department which stated that her claim would be properly investigated. (*Id.*). Subsequently, an attorney for Defendant contacted Plaintiff both to discuss Adriana's conduct and to ensure Plaintiff that an investigation

4

into her injuries was underway. (*Id.*). To date, Plaintiff alleges that all contacts with Defendant have ceased and that the documents she sent to Defendant were returned to her. (*Id.*).

The instant action followed from the circumstances highlighted above.

### B. Procedural Posture

Plaintiff originally filed suit against Defendant in the Franklin County Court of Common Pleas on May 28, 2019.[2] (ECF No. 1, Def.'s Ex. 1). On July 2, 2019, Defendant removed to this Court on the basis of diversity jurisdiction. (ECF No. 1 at 3). The next day, on July 3, 2019, Plaintiff filed a Complaint before this Court mimicking the pleading she filed in state court. (*See generally* ECF No. 3).

Although Plaintiff made several allegations in her Complaint, she failed to specify a cause of action. (*Id.*). In response, Defendant moved to dismiss Plaintiff's Complaint on July 9, 2019 pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). (ECF No. 4 at 1).

On July 19, 2019, Plaintiff responded to Defendant's motion, and she also requested that this Court remand her case back to the Franklin County Court of Common Pleas. (ECF No.s 6 & 8). Additionally, Plaintiff moved this Court on August 5, 2019 to amend her Complaint. (ECF No. 9). Plaintiff's proposed amendments would, in part, add a numbering scheme highlighting her claims,[3] allegations in support of those claims and allegations germane to this Court's jurisdiction.

In response to all of Plaintiff's motions, Defendant filed three separate response briefs. (ECF No.s 11-13). Defendant also filed a Motion to Strike Plaintiff's Motion to Amend and State a Claim and a Motion for Sanctions against Plaintiff. (ECF No.s 14 & 15).

---

[2] *Wright v. Stryker Corporation*, 19-CV-4356 (Ohio Ct. C.P. 2019).

[3] Plaintiff asserts the following causes of action in her Amended Complaint: (i) negligence; (ii) strict product liability; (iii) "exspired;" [sic] (iv) failure to warn; (v) defective product; (vi) intent to harm; (vii) attempted murder; and (viii) oversized. (ECF No. 9 at 2).

5

## II

Pursuant to Rule 15(a), a trial court should freely grant a party leave to amend his or her pleadings when justice so requires. Fed. R. Civ. P. 15(a). This coincides with Rule 15(a)'s "liberal policy of permitting amendments to ensure the determination of claims on their merits." *Oleson v. United States,* 27 Fed. Appx. 566, 569 (6th Cir. 2001) (internal quotations omitted). Further, "[p]ro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers." *Howard v. City of Memphis,* No. 2:15-CV-2800-JDT-DKV, 2016 WL 4435254, at *3 (W.D. Tenn. Aug. 19, 2016) (quotation marks and citations omitted). Yet, an amendment is futile if it would not be able to survive a motion to dismiss. *Miller v. Calhoun Cnty.,* 408 F.3d 803, 817 (6th Cir. 2005) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

Federal Rule of Civil Procedure 12 authorizes dismissal of a lawsuit for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). This is so because a court lacking personal jurisdiction is without power to issue an in personam judgment. *Pennoyer v. Neff,* 95 U.S. 714 (1878). The party seeking to assert personal jurisdiction bears the burden of showing that such jurisdiction exists. *Brunner v. Hampton,* 441 F.3d 457, 462 (6th Cir. 2006) (citing *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1261-62 (6th Cir. 1996)).

When ruling on a jurisdictional motion to dismiss made pursuant to Rule 12(b)(2) without conducting an evidentiary hearing, a court must consider the pleadings and affidavits in the light most favorable to the plaintiff. *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir. 1996). Further, a "court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal." *Id.* Dismissal is proper only if all the specific facts which the plaintiff alleges collectively fail to state a *prima facie* case for jurisdiction. *Id.*

Plaintiff seeks to amend her complaint for two reasons. First, Plaintiff acknowledges in her Motion to Amend that her Complaint may not have clearly stated her claims against Defendant.

(ECF No. 9 at 2). For that reason, Plaintiff included in her Motion to Amend a numbering scheme for her claims, along with additional allegations in support of those claims. (*Id.*). Second, Plaintiff, by way of her Motion to Amend, also seeks to add allegations germane to this Court's jurisdiction over Defendant. (*Id.* at 3).

Moreover, Plaintiff argues that the Court should deny Defendant's Rule 12(b)(2) challenge because, on June 11, 2019, the Franklin County Court of Common Pleas completed service on Defendant. (ECF No. 6 at 1); *see Wright v. Stryker Corporation,* 19-CV-4356 (Ohio Ct. C.P. 2019). And finally, Plaintiff appears to argue that personal jurisdiction is proper because "STRYKER CORPORATION IS . . . LOCATED WITHIN THE STATE OF OHIO" and "THE [Stryker Implant] WAS . . . MANUFACTURED AND SOLD WITHIN THE STATE OF OHIO." (ECF No. 9 at 3).

Defendant moves both to dismiss Plaintiff's Complaint and to strike Plaintiff's Motion to Amend, arguing essentially that Plaintiff's motion is futile since her Amended Complaint would not survive a Rule 12 challenge. (*See generally* ECF No.s 4 & 14). Primarily, Defendant challenges Plaintiff's Complaint and Motion to Amend pursuant to Rule 12(b)(2) which authorizes dismissal for lack of personal jurisdiction. (ECF No. 4-1, at 2). Defendant avers that Plaintiff has the burden of proving personal jurisdiction exists over a non-resident by a preponderance of the evidence and that her Amended Complaint would fail to meet that standard. (*Id.*). This Court agrees.

Federal Rule of Civil Procedure 4(k)(1)(A) allows a federal court to confer personal jurisdiction "over any properly-served defendant 'who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located.'" *V-Soft Consulting Grp., Inc. v. Logic Corp.*, No. 3:16-cv-425-DJH, 2017 U.S. Dist. LEXIS 49011, *9-10 (W.D. Ky. Mar. 31, 2017). A state court could exercise personal jurisdiction over a party pursuant to a number

of traditional bases, or because of the state's long-arm statute. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880-881 (2011); *see also Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510–511 (6th Cir. 2006). There are several traditional bases upon which personal jurisdiction may be established at the state level such as service of process within the forum state, a defendant's domicile in the forum state at the time the suit commences, or a defendant's explicit consent. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. at 880-881 (2011). Plaintiff's argument that jurisdiction is proper because the Franklin County Court of Common Pleas completed service on Defendant appears to invoke the first of this non-exhaustive list.

Turning then to the question of whether Ohio properly established personal jurisdiction over Defendant by service of process, the Supreme Court explained in the seminal cases *Pennoyer v. Neff* and *Burnham v. Superior Court of Cal.* that personal jurisdiction at the state level can be established if a party is served with process within the state's borders. *See Pennoyer v. Neff*, 95 U.S. 714, 722 & 723 (1877); *see also Burnham v. Superior Court of Cal.*, 495 U.S. 604, 610-611 (1990). With this standard in mind, the Court looks to whether the Franklin County Court of Common Pleas effectuated service of process on Defendant within Ohio's borders. Plaintiff correctly argues that the Franklin County Court of Common Pleas completed service of process on Defendant, but Plaintiff failed to observe that it was completed through certified mail delivered to Defendant's address in Allendale, New Jersey. *Wright v. Stryker Corporation*, 19-CV-4356 (Ohio Ct. C.P. 2019). As such, it is clear that the Franklin County Court of Common Pleas did not complete service of process on Defendant within Ohio's borders.

Turning next to the question of whether jurisdiction is proper because, as Plaintiff alleges, Defendant is located in Ohio, the Supreme Court explained in *Milliken v. Meyer* that a state court has personal jurisdiction over those domiciled in its borders. *See Milliken v. Meyer*, 311 U.S. 457,

463-464 (1940); *see also J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. at 880-881. "With respect to corporations, a corporation's domicile is the state of its incorporation and where it conducts business." *Flynn v. Greg Anthony Constr. Co.*, 95 Fed. Appx. 726, 740 (6th Cir. 2003) (citing 8 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 4029, at 410 (2001)). Put another way, a corporation is considered a citizen of both its place of incorporation and its principal place of business. *Vaughn v. Holiday Inn Cleveland Coliseum*, 56 Fed. Appx. 249, 250 (6th Cir. 2003) (citing 28 U.S.C. § 1332(c)(1)).

Here, Plaintiff's contention that jurisdiction is proper because Defendant is located in Ohio falls short of the standard explained *supra*. Specifically, Plaintiff does not allege that Defendant is incorporated in Ohio nor does she allege that Defendant's principal place of business is located in Ohio. Plaintiff alleges instead "THAT STRYKER CORPORATION IS ALSO LOCATED WITHIN THE STATE OF OHIO and "THAT THE [Stryker Implant] WAS ALSO MANUFACTURED AND SOLD WITHIN THE STATE OF OHIO." (ECF No. 9 at 3). There can be no doubt that these allegations fail to claim that Defendant is incorporated in Ohio. But, to the extent that Plaintiff might argue her allegations establish Ohio as Defendant's principal place of business, the Supreme Court has explained that a corporation's:

> "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center." And in practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the "nerve center," and not simply an office where the corporation holds its board meetings . . . .

*Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). Because Plaintiff only alleges that Defendant is located in Ohio, and not that Defendant's nerve center or headquarters is located in the same, this Court cannot conclude that Defendant is domiciled in Ohio.

Thus, the Court is not persuaded that personal jurisdiction at the state level is proper under the traditional bases discussed *supra*. Yet, the Court remains acutely aware of the fact that personal jurisdiction may also be established by a state's long-arm statute. *Kroger Co. v. Malease Foods Corp.*, 437 F.3d at 510–511.

In this diversity action, Ohio law determines whether personal jurisdiction exists. *See Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) ("A federal court sitting in diversity must apply the law of the forum state to determine whether it may exercise jurisdiction over the person of a non-resident defendant.") (citations omitted). The Ohio long-arm statute does not extend to the constitutional limits of the due process clause. *Calphalon Corp, v, Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). Therefore, determining whether personal jurisdiction over a non-resident defendant is proper is a two-step process. *Kroger Co. v. Malease Foods Corp.*, 437 F.3d at 510–511. First, the plaintiff must prove that the defendant meets one of the Ohio long-arm statute's criteria. *Id.* Second, the Court's exercise of personal jurisdiction must be within the bounds of constitutional due process. *Id.*

The Ohio long-arm statute provides that a court may exercise personal jurisdiction over a corporation who acts directly or by an agent, as to a cause of action arising from the corporation:

> (1) [t]ransacting any business in this state; (2) [c]ontracting to supply services or goods in this state; (3) [c]ausing tortious injury by an act or omission in this state; (4) [c]ausing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; (5) [c]ausing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; (6) [c]ausing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state; (7) [c]ausing tortious injury to any

person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity; (8) [h]aving an interest in, using, or possessing real property in this state; (9) [c]ontracting to insure any person, property, or risk located within this state at the time of contracting.

Ohio Rev. Code § 2307.382(A)(1)-(9).

Although Plaintiff never mentions Ohio's long-arm statute in her Complaint or her proposed Amended Complaint, she does allege that Defendant is located in Ohio and that the Stryker Implant was manufactured and sold in Ohio. Presumably, by way of these allegations, Plaintiff is attempting to invoke either of the initial three criteria set forth in Ohio Rev. Code § 2307.382(A) which authorize personal jurisdiction over a defendant when the defendant is either "[t]ransacting business in this state," "[c]ontracting to supply services or goods in this state" or "[c]ausing tortious injury by an act or omission in this state." Ohio Rev. Code § 2307.382(A)(1)-(3). While the Court presumes that Plaintiff, a *pro se* litigant, is attempting to invoke Ohio Rev. Code § 2307.382(A)(1)-(3), the Court's analysis need not reach the merits of whether any of those criteria apply because Plaintiff has not alleged sufficient facts in her Amended Complaint to afford this Court the opportunity to do so.

The Sixth Circuit has embraced the position that a plaintiff may not stand on her pleadings and must, instead, show specific facts demonstrating that the court has jurisdiction. *See Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991). Put another way, "in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.* The Court may also consider documents attached to and referenced in the pleadings without converting the motion to dismiss into a motion for summary judgment. *See Barany-Snyder v. Weiner,* 539 F.3d 327, 332 (6th Cir. 2008). And, again, the pleadings should be viewed in the light most favorable to the plaintiff. *Kerry Steel, Inc. v. Paragon Indus., Inc.,* 106 F.3d 147, 153 (6th Cir.1997).

Plaintiff attached several documents to her Motion to Amend,[4] none of which were affidavits. (*See generally* ECF No. 9). Further, the documents that Plaintiff did attach to her Amended Complaint fail to support her contention that Defendant is located within Ohio or that the product implanted in her body was manufactured and sold by Defendant in Ohio.[5] At best, the documents establish that Plaintiff initiated a google search for "stryker corporation columbus" the results of which revealed several job openings posted online by "Stryker Corporation." (ECF No. 9 at 50-51). The search revealed four job openings in total: two located in "Dublin, Ohio" and two located in "Virtual, Ohio Columbus." (*Id.*).

The circumstances highlighted above are not enough to establish personal jurisdiction under Ohio's long-arm statute. According to the statute, "[w]hen jurisdiction over a person is based solely upon [Ohio Rev. Code § 2307.382], only a cause of action *arising from* acts enumerated in [that] section may be asserted . . . ." Ohio Rev. Code § 2307.382(C) (emphasis added). The Sixth Circuit has explained that "[o]ne distinction between the [Ohio] long-arm statute and the United States Constitution is rooted in the "arising from" clause of § 2307.382(C), which requires that the defendant's actions in the state must be the proximate cause of the injury complained of." *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 Fed. Appx. 425, 430 (6th Cir. 2006).

Even assuming *arguendo* that Defendant's job postings somehow satisfy one of the criteria set forth in Ohio's long-arm statute, Plaintiff does not allege that those same postings are the

---

[4] Since Defendant argues that Plaintiff's Motion to Amend is futile because it cannot survive Defendant's Rule 12(b)(2) challenge, the Court will examine the document's attached to Plaintiff proposed Amended Complaint to determine whether they make a *prima facie* showing of personal jurisdiction.

[5] Plaintiff attached several documents to her Motion to Amend such as: (i) X-Ray images; (ii) letters Plaintiff received from Adriana who, at the time, was located in Allendale, New Jersey; (iii) printouts of Plaintiff's correspondence with Cleveland Clinic and various physicians; (iv) printouts of Ohio's strict products liability laws; (v) articles discussing recent lawsuits filed against Stryker Orthopedics for designing defective hip joints; (vi) articles discussing Stryker Orthopedics' presence in the orthopedics market and industry; and (vii) that she initiated a Google search which revealed that Stryker Corporation is offering jobs in both "Dublin, Ohio" and "Virtual, Ohio Columbus." (*See generally* ECF No. 9). Only the latter of these documents are germane to the question of this Court's jurisdiction.

proximate cause of her injury. Plaintiff's dispute is predicated on the suffering she endures from the allegedly defective Stryker Implant; yet, she has not alleged any facts in her Amended Complaint that would link her suffering or the Stryker Implant to Stryker Corporation's online job postings. Plaintiff's Amended Complaint, therefore, fails to bring Defendant within the purview of Ohio's long-arm statute. For these reasons, even after interpreting the pleadings in a light most favorable to Plaintiff, the Court finds that she has not met her burden of proving that Defendant meets any of the criteria set forth in Ohio's long-arm statute.

In light of the circumstances highlighted above, Plaintiff's Motion to Amend is futile because it fails to allege specific facts which collectively state a *prima facie* case for personal jurisdiction.

### III

Defendant moves for sanctions based on Plaintiff's conduct in bringing and litigating this action. (ECF No. 15-1 at 1). Specifically, Defendant argues that Plaintiff's suit is harassing, scandalous, redundant, unviable, unsupported, unwarranted by existing law, and lacking in evidentiary support. (*Id.*). Defendant further contends that Plaintiff's conduct is needlessly increasing the cost of litigation. (*Id.*). In support of its position, Defendant highlights Plaintiff's criminal claims as well her claims for "EXSPIRED [sic]," "OVERSIZED." (*Id.*). Plaintiff did not respond to Defendant's motion.

Defendant specifically moves for sanctions under Rule 11. According to Rule 11, an attorney or *pro se* litigant who files a document with the Court certifies, "after an inquiry reasonable under the circumstances," the following:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b)(1)–(4). If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Fed. R. Civ. P. 11(c)(1).

Sanctions can be monetary or nonmonetary, and "must be limited to what suffices to deter repetition of the conduct" at issue. Fed. R. Civ. P. 11(c)(4). *Pro se* plaintiffs are not immune to sanctions under Rule 11 or the Court's inherent powers. *See Stevens v. Mooney*, 1996 WL 12504881, at *2 (6th Cir. Mar. 20, 1996) ("*Pro se* litigants must comply with Rule 11 and make a reasonable inquiry as to whether a complaint is well-grounded in fact and warranted by existing law."); *see also Vaughan v. Brigham*, No. CIV.A. 3:10-05-DCR, 2011 WL 2633369, at *3–4 (E.D. Ky. July 5, 2011) (district court relying on its inherent powers to sanction a *pro se* litigant).

As to Rule 11, the Court finds that Plaintiff's conduct in pursuing her case against Defendant fails to meet "an objective standard of reasonableness under the circumstances." *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir. 1990). Plaintiff makes several conclusory allegations in her Complaint and Amended Complaint that it was both Adriana's and Defendant's specific intent to cause her significant or mortal injury. (ECF No. 3 at 3; ECF No. 9 at 2). Beyond those allegations, Plaintiff also included a claim for attempted murder in her Amended Complaint. (ECF No. 9 at 2). These are criminal matters, not civil. The Court, therefore, agrees with Defendant that Plaintiff's allegations constitute improper harassment and have undoubtedly increased the cost

of litigation. Fed. R. Civ. P. 11(b)(1). Likewise, Plaintiff's claims for "EXSPIRED [sic]," "OVERSIZED" have no foundation in existing law which is a clear violation of Federal Rule of Civil Procedure 11(b)(2).

In light of the above, the Court remains cognizant of the "most important factor" in issuing Rule 11 sanctions which is "deterrence." *Danvers v. Danvers*, 959 F.2d 601, 605 (6th Cir. 1992). If this action were to survive dismissal, which it will not, the Court would be inclined impose non-monetary sanctions such as: barring Plaintiff from filing further motions in this action containing criminal allegations against Defendant, and barring Plaintiff from alleging any claims against Defendant in this action that are not supported by existing law. If Plaintiff's conduct were to exceed these parameters, the Court would issue an order requiring Plaintiff to seek leave from the Court before filing further motions. But because the instant action is dismissed for reasons explained *supra*, the Court finds that sanctions at this stage would be improper since they would have minimal or no deterrent effect.

## IV

For the foregoing reasons, Defendant's Motion to Dismiss for Failure to State a Claim, Motion to Dismiss for Lack of Jurisdiction and Defendant's Motion to Strike are **GRANTED**. (ECF No.s 4 & 14). Plaintiff's Motion to Remand and her Motion to Amend and to State a Claim and Not Dismiss are **DENIED as moot**. (ECF No.s 6 & 9). And Defendant's Motion for Sanctions is **DENIED**. (ECF No. 15). This case is **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

3-18-2020
**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

15